# In the United States Court of Federal Claims

STRATEGI CONSULTING, LLC,

      *Plaintiff,*

v.

THE UNITED STATES,

      *Defendant*.

No. 26-450[1]
(Filed: July 24, 2026)

*Nicholas T. Solosky*, Spencer Fane LLP, Washington, D.C., for Plaintiff.

*Collin T. Mathias*, Civil Division, U.S. Department of Justice, Washington, D.C.

**OPINION AND ORDER**

**LERNER,** *Judge*.

In this bid protest action, Plaintiff Strategi Consulting, LLC ("Strategi") completed a previous Phase II contract to develop Tactical Surveillance, Reconnaissance, and Tracking ("TacSRT") software for the U.S. Air Force ("Air Force") and U.S. Space Force ("Space Force") through the Small Business Innovation Research Program ("SBIR"). Strategi brings this action to protest the Government's failure to award it a follow-on Phase III SBIR contract despite a continuing need. Compl. ¶ 5, ECF No. 1. Plaintiff further alleges the Government has assigned de facto Phase III work to the quasi-government, quasi-private organization Dragon Army. *Id.* ¶¶ 6, 10. Plaintiff argues this assignment amounts to a violation of the SBIR statutory preference to award Phase III contracts to the previous contractor. *Id.* ¶ 13. Defendant characterizes the Government's actions as permissible internal development of the Government's own technology. Def.'s Mot. to Dismiss at 15, ECF No. 29 ("Mot.").

The Government moves to dismiss under Rule of the Court of Federal Claims ("RCFC") 12(b)(1) on grounds that there is no "procurement" and thus this Court lacks jurisdiction, or in the alternative, that this protest is precluded by the Task Order Bar in the Federal Acquisition and Streamlining Act of 1994 ("FASA"). Mot. at 1–2, 18. However, the Court's broad jurisdiction over actions in connection with a procurement encompasses the claims as alleged in Plaintiff's Complaint. Also, the Task Order Bar does not preclude Plaintiff's claim that

---

[1] This Opinion was filed under seal on July 9, 2026. ECF No. 40. The parties jointly notified the Court that they will not propose redactions. ECF No. 42. Accordingly, the Court reissues this Opinion publicly without redactions.

Defendant has assigned de facto Phase III work outside the scope of previous task orders. Defendant's argument that Plaintiff's allegations lack redressability also fails because the bid protest statutes contemplate the declaratory and injunctive relief Plaintiff requests.

Accordingly, Defendant's Motion is **DENIED**.

## I.    Background

### A.    Factual Background

Strategi protests the Government's actions as violations of the SBIR program. The SBIR program is codified in the Small Business Innovation Development Act of 1982, Section 9 of the Small Business Act, 15 U.S.C. § 638. Compl. ¶ 27. SBIR requires certain federal agencies to reserve a portion of their research and development funds for small businesses. *Id.* SBIR has a uniform process for projects solicited under its statutes, including a three-phase award process. *Id.* ¶ 28; 15 U.S.C. § 638(e)(4). Phase I determines "the scientific and technical merit and feasibility of ideas that appear to have commercial potential." 15 U.S.C. § 638(e)(4)(A). Phase II projects "further develop proposals which meet particular program needs." *Id.* § 638(e)(4)(B). "[W]here appropriate," agencies can solicit Phase III SBIR projects "for work that derives from, extends, or completes efforts made under prior funding agreements under the SBIR program." *Id.* § 638(e)(4)(C). The SBIR statute requires federal agencies to issue Phase III awards (if awarded at all) to the SBIR recipients who created the technology "*[to] the greatest extent practicable.*" *Id.* § 638(r)(4)(C) (emphasis added).

Strategi was awarded a Phase II SBIR contract from Space Systems Command ("SSC") Systems Delta 10, a group in the Space Force, on August 14, 2024. Compl. ¶ 41. Under the contract, Strategi built the TacSRT automation platform, Voltron. *Id.* Strategi's contract closed on November 14, 2025, "with all deliverables accepted." *Id.* ¶ 44. The Government validated Voltron's capabilities when it awarded Strategi the Beowulf Certificate to Field (Authorization to Operate equivalent) and Strategi passed Iterative Capability Testing ("ICT"). *Id.* ¶ 43. In its Motion to Dismiss, the Government admits Voltron received its certifications; but it asserts several unresolved technical comments remained and Voltron did not proceed to the second round of testing under the onboarding process. Mot. at 6 n.5.

According to the Complaint, Plaintiff alleges the Air Force "identified a continuing requirement for TacSRT development through Voltron" before the Phase II contract closed. Compl. ¶ 45. On July 31, 2024, Plaintiff gave government representatives a presentation titled, "How to Issue a SBIR Phase 3," detailing broader work in relation to TacSRT development. *Id.* ¶ 48. Plaintiff alleges Patrick Kitchens, a Government civilian within the Air Force Research Lab ("AFRL"), indicated the intent to pursue work proposed by Strategi, and Strategi prepared a solicitation package proposal in response. *Id.* ¶¶ 48–49, 135. However, Strategi alleges the Agency then pursued its proposed Phase III work with another contractor. *Id.* ¶ 50.

Strategi alleges in September 2024, shortly after their Phase II award, the AFRL's subsidiary organization, DRAGON ("Defense Readiness Agile Gaming Online Network") Army ("Dragon Army"), began work on Vigil, a TacSRT platform that was duplicative of Voltron.

*Id.* ¶¶ 6, 55.  Plaintiff claims "Dragon Army operates as a pooled, badge-less, multi-contractor environment in which the program lead ([Patrick] Kitchens as Government Product Owner) directed personnel across multiple contract vehicles and labor streams as though they were one team.  This structure enabled the Government to continue TacSRT/Voltron-derived work without a clean, transparent, single procurement path."  *Id.* ¶ 58.  According to the Government, Dragon Army "employs multiple service support contractors to support its software development and maintenance missions" along with its government employees.  Mot. at 5 (citing Compl. ¶ 6).  Defendant does not state whether Dragon Army should be considered a private contractor or an internal government organization.  *See generally* Mot.  However, Defendant's Motion argues Strategi is contesting "a decision by the Government to internally develop software . . . using existing contractors."  *Id.* at 13.

According to Plaintiff, Dragon Army created and developed "competing TacSRT tools, including Vigil, OPP Microservice, and TacSRT Core Tasking" using a "multi-contractor / multi-contract effort."  Compl. ¶ 55.  Strategi claims Dragon Army uses existing contract vehicles, including task orders, to assign "de facto" Phase III development of Voltron-derived capabilities.  *Id.* ¶¶ 71–73.  Plaintiff identifies four private entities with task orders or prior contracts with Dragon Army—Tech7, KBR, Parsons, and DFNN—and alleges they have been assigned "Voltron-derived" work.  *Id.* ¶ 73.

Plaintiff claims Vigil and related TacSRT work generated by Dragon Army are identical to the Voltron platform and that Dragon Army began replicating Voltron in September 2024.  *Id.* ¶¶ 60, 69.  Plaintiff states, "[t]he challenged Vigil/TacSRT work is not merely in the same mission area as Voltron ‑ it is the same workflow stack, rebuilt on substitute performers, using the same operational concepts and feature architecture that Voltron delivered or planned."  *Id.* ¶ 69.  Strategi identified several backlog items on Jira (a project management software) for Vigil work and produced charts indicating how the Jira items replicated Voltron capabilities and Strategi ideas for Phase III work.  *Id.* ¶ 70.

Plaintiff additionally alleges the decision not to award Strategi Phase III work was a biased, intentional act, citing statements by Mr. Kitchens: "(i) On December 15, 2024, Kitchens explicitly declared his intent to bring TacSRT back to Dragon Army and his personal dislike of Strategi team members and (ii) On February 12, 2025, Kitchens stated: 'Barb[ara Golf (the Contracting Officer)] is going to take the funding and when we do, we won't keep your team.'"  *Id.* ¶ 52.

On December 16, 2025, the Agency requested Strategi turn over the Voltron codebase to "support critical TacSRT program execution and ongoing sustainment activities."  *Id.* ¶ 62.  On December 23, 2025, Strategi stated it had provided the codebase, and asserted "all Government use of the VOLTRON codebase and associated technical data remains subject to Strategi's SBIR data rights."  *Id.* ¶¶ 63–64.  Plaintiff further responded that it should be "afforded the opportunity to fulfill the requirement for any work deriving from or extending the prior SBIR work."  *Id.* ¶ 65.  Strategi alleges the Government did not respond to its request.  *Id.* ¶ 66.

3

According to Plaintiff, the Agency directed Dragon Army to rebuild Voltron through Vigil, and Dragon Army has since extended and further developed the project, which in fact, constitutes Phase III work under the SBIR.  Pl.'s Resp. ("Resp.") at 16, ECF No. 36.

**B.      Procedural History**

Plaintiff filed suit on March 20, 2026.  Compl.  Plaintiff also moved for a temporary restraining order ("TRO") the same day, which the Court denied at a March 24, 2026 Joint Preliminary Status Conference.  Mot. for TRO, ECF No. 2; Order, *Strategi Consulting, LLC v. United States*, No. 26-450 (Fed. Cl. March 24, 2026).  The Court adopted the Parties' jointly proposed schedule for a motion to dismiss, cross-motions for judgment on the administrative record ("AR"), and a potential motion to supplement the AR on March 26, 2026.  Mots. Scheduling Order, ECF No. 14.

After the Government submitted the AR, Plaintiff filed a Motion to Supplement to admit additional documents to the record, including correspondence between the protester and Dragon Army companies, records of discussions between the agency and the protester, and documents related to proposals for a Phase III project.  Exhibit 1, Mem. in Supp. of Mot. to Suppl., ECF No. 23-1; Mot. to Suppl. the AR at 2, ECF No. 22.  Strategi also petitioned the Court to instruct the Government to produce development records for "Vigil . . . and other TacSRT tools."  Mot. to Suppl. the AR at 2.  Plaintiff further moved to permit Strategi to conduct depositions of agency personnel, including the Contracting Officer, to "probe the factual bases of her assertions" in her Declaration.  *Id.*

On May 4, 2026, the Government filed a Motion to Amend Schedule and Stay Briefing on Plaintiff's Motion to Supplement the AR.  Mot. to Amend, ECF No. 24.  It requested the Court resolve jurisdictional questions first and amend the schedule to delay further action until Defendant's Motion to Dismiss was resolved.  *Id.* at 9.  Plaintiff filed a response in opposition on May 8, 2026.  ECF No. 25.  The Court granted Defendant's Motion and stayed briefing on Plaintiff's Motion to Supplement on May 12, 2026.  ECF No. 28.

Strategi's Complaint alleges the Government (1) violated SBIR's Procurement Preference by using existing contracts to procure work that extends Strategi's Phase II contract; (2) violated the SBIR's Procurement Preference and acted arbitrarily and capriciously by not awarding it a Phase III contract; and (3) violated SBIR's Policy Directive's requirement to negotiate with the Phase II contractor, document impracticalities, and provide notice to the SBA. Compl. ¶¶ 96–129.  Finally, Plaintiff seeks a declaratory judgment that the Agency has engaged and continues to engage in bad faith.  Compl. ¶¶ 130–42.

The Government moves to dismiss because there is no "procurement or proposed procurement" in dispute and therefore, this Court's procurement bid protest jurisdiction is inapplicable.  Mot. at 10–17.  Defendant maintains that any agency work in dispute is too informal to amount to a "procurement."  Def.'s Reply ("Reply") at 1–11, ECF No. 37.  In the alternative, the Government alleges that Plaintiff's Complaint relates to task orders, which are barred from review by the FASA.  Mot. at 18–21.  The Government also argues that there is no Article III standing because Plaintiff's claims lack redressability under bid protest statutory

provisions. *Id.* at 21–27. Lastly, Defendant posits dismissal is required because amendment of the Complaint would be futile. *Id.* at 27–28.

Strategi maintains its suit falls properly under this Court's bid protest jurisdiction because Strategi contests the Government's decision to assign work to a third party and requests injunctive and declaratory relief available in bid protests. Resp. at 12–15, 26–27. Plaintiff also asserts its Complaint discusses task orders only tangentially, and therefore, its suit is not precluded by FASA Task Order Bar. *Id.* at 20—-26.

## II.      Legal Standards

### A.      Motion to Dismiss Standard

Defendant moves to dismiss Plaintiff's claims under RCFC 12(b)(1) for lack of subject-matter jurisdiction and failure to establish standing under Article III of the Constitution, U.S. Const. art. III. *See generally* Mot. If the Court determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action. RCFC 12(h)(3).

When reviewing a motion to dismiss for a lack of jurisdiction, "the court is generally 'obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor.'" *FFTF Restoration Co., LLC v. United States*, 86 Fed. Cl. 226, 235 (2009) (quoting *Henke v. United States,* 60 F.3d 795, 797 (Fed. Cir. 1995)). However, "the court 'may find it necessary to inquire into jurisdictional facts that are disputed.'" *Id.* (quoting *Rocovich v. United States,* 933 F.2d 991, 993 (Fed. Cir. 1991)). "In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings …." *Omran Holding Grp. v. United States*, 128 Fed. Cl. 273, 280 (2016) (quoting *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993)).

If jurisdictional facts are in dispute, the Plaintiff bears the burden to prove its jurisdictional allegations. *Advanced Simulation Tech. Inc. v. United States*, 173 Fed. Cl. 587, 596 (2024) ("*ASTi*"), *appeal dismissed*, No. 2025-1089, 2025 WL 593520 (Fed. Cir. Feb. 24, 2025) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)) ("[I]f a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof."); *Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 113 (2011) (citing *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the . . . court's subject matter jurisdiction [is] put in question it [is] incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction."). The Federal Circuit has established that the plaintiff must demonstrate subject matter jurisdiction by a preponderance of the evidence. *Reynolds,* 846 F.2d at 748; *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013).

### B.      Bid Protest Jurisdiction Standard

The Tucker Act "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States" and "waives the Government's sovereign

immunity for those actions." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). Plaintiff filed suit in this Court under this Court's bid protest jurisdiction. Compl. ¶ 17.

"Bid protests are heard by this Court under the Tucker Act . . . ." *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 517 (2011); 28 U.S.C. § 1491. The Tucker Act provides,

> [the Court of Federal Claims] shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract *or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.*

28 U.S.C. § 1491(b)(1) (emphasis added).

This dispute centers on the last clause, granting jurisdiction over "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Resp. at 13–14.

The Federal Circuit has broadly interpreted the term "procurement" in 28 U.S.C. § 1491(b)(1). *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381 (Fed. Cir. 2012) ("[A] narrow application of section 1491(b)(1) does not comport with the statute's broad grant of jurisdiction over objections to the procurement process."); *see also Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008) (finding the statute includes allegations in "connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services'" (quoting 41 U.S.C. § 111)). "To establish jurisdiction pursuant to this definition, [a contractor] must demonstrate that the government at least initiated a procurement, or initiated 'the process for determining a need' for acquisition." *Distributed Sols.*, 539 F.3d at 1346.

This broad interpretation of procurement provides this Court jurisdiction to review certain agency denials of unsolicited proposals, as well as an agency's decision to insource work to government agencies instead of pursuing competitive private procurement. *See Diaz v. United States*, 853 F.3d 1355, 1357–58 (Fed. Cir. 2017) (holding subject-matter jurisdiction existed for claim that the government improperly denied unsolicited procurement proposal); *Santa Barbara Applied Research, Inc. v. United States*, 98 Fed. Cl. 536, 542–43 (2011) (finding the government's decision to insource amounted to a procurement decision under the Tucker Act); *see Loomacres, Inc. v. United States*, 134 Fed. Cl. 779, 783 (2017) (finding bid protest standing for plaintiff challenging government insourcing decision); *see also Fisher-Cal Indus., Inc. v. United States*, 839 F. Supp. 2d 218, 222 (D.D.C. 2012) ("As numerous other courts, including the Fifth, Eleventh, and Federal Circuits, have noted, insourcing necessarily involves 'determining a need for property or services' and whether there was a need to perform such functions through private contractors."), *aff'd*, 747 F.3d 899 (D.C. Cir. 2014).

### C.    Article III Standing Redressability Provisions

Defendant additionally moves to dismiss Plaintiff's suit for lack of standing under Article III of the Constitution.  Mot. at 21–27.[2]  The Government posits Plaintiff's claims are not redressable under this Court's bid protest jurisdiction.  *Id.*

As a threshold jurisdictional matter, a plaintiff must show that it suffered an injury that would likely be redressed by judicial relief.  *CSI Aviation, Inc. v. United States*, 181 Fed. Cl. 143, 170 (2026) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Id.* at 170–71 (quoting *Lujan*, 504 U.S. at 561).  "An alleged injury to a legally protected interest is considered redressable, if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *Maryland Enter., L.L.C. v. United States*, 91 Fed. Cl. 511, 524 (2010) (quoting *Lujan,* 504 U.S. at 561).  "In a bid protest case, like any other, 'the party invoking federal jurisdiction bears the burden of establishing standing.'"  *CSI Aviation, Inc.*, 181 Fed. Cl. at 172 (quoting *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018)).

Defendant argues Plaintiff's claims are not redressable as a bid protest.  And if Plaintiff's claims can be directly redressed by other statutes, then the Court is precluded from bid protest review.  Mot. at 21–22.  "[S]tatutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act."  *United States v. Bormes*, 568 U.S. 6, 13 (2012).

### D.    SBIR Jurisprudence

Finally, SBIR mandates federal agencies issue any Phase III awards to the prior awardee that created the technology "to the greatest extent practicable."  15 U.S.C. § 638(r)(4).  While SBIR does not require agencies to pursue a Phase III award, it does require a preference for the prior awardee if one is made.  *Lite Machines Corp. v. United States*, 143 Fed. Cl. 267, 284 (2019).

The Federal Circuit has addressed how to apply SBIR's statutory preference in at least two instances.  In *Arlton v. Aerovironment, Inc.*, the Federal Circuit affirmed summary judgment for a company using a patent produced under SBIR because the company's usage fell under affirmative defenses under 28 U.S.C. § 1498.  No. 21-2049, 2026 WL 294827, at *4 (Fed. Cir. Feb. 4, 2026).  The Federal Circuit noted, in dicta, that if SBIR obligated the government to

---

[2] To prevail in a procurement action, Plaintiff must also show statutory standing to state a bid protest claim under RCFC 12(b)(6).  *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1363 (Fed. Cir. 2009); *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023).  Defendant does not bring a motion to dismiss for a failure to state a claim nor mention statutory standing, and it is, therefore, waived.  *See* Mot.  However, Plaintiff would need to show pre-award bid protest statutory standing to prevail on a motion for judgment on the administrative record.  *Weeks Marine*, 575 F.3d at 1363.

award a Phase III contract to a disappointed bidder, the appropriate remedy would be to pursue a bid protest action in the Court of Federal Claims. *Id.* In *Night Vision Corp. v. United States*, the Federal Circuit asserted that although SBIR prioritizes awarding Phase III work to the earlier Phase II contractor, this does not create a contractual commitment for an award. 469 F.3d 1369, 1374–75 (Fed. Cir. 2006). The Federal Circuit affirmed the Court of Federal Claims' dismissal for failure to state a claim under RCFC 12(b)(6). *Id.*

This Federal Circuit jurisprudence does not directly address whether this Court possesses pre-award bid protest jurisdiction over a failure to award an SBIR Phase III claim. However, this Court has applied the Federal Circuit's past broad interpretation of a claim "in connection with a procurement" to find that a protest invoking SBIR's preference was properly brought under the Tucker Act. *Squire Solutions, Inc. v. United States*, 156 Fed. Cl. 249, 264–65 (2021) (citing *Sys. Application & Techs., Inc.*, 691 F.3d at 1381).

## III.    Discussion

### A.    Plaintiff has Sufficiently Alleged Claims Connected to a Procurement or Proposed Procurement.

#### 1.    Plaintiff's Allegations Fall under the Umbrella of Actions Related to a Procurement.

This Court has bid protest jurisdiction over actions by "an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The factual allegations here are sufficient to defeat the Motion to Dismiss and show by a preponderance of the evidence that the agency's actions relate to a procurement.

Numerous key facts are in dispute. For example, after the Government failed to respond to its proposals for a Phase III project, Plaintiff alleges the Government replicated the work it produced for Voltron to prepare for a private contractor takeover through Vigil. Compl. ¶¶ 6–7. The Government denies this and argues Vigil is simply another TacSRT software with similarities to Voltron and is more compatible with the AFRL's infrastructure. Mot. at 7.

In Plaintiff's view, Vigil "derives from, extends, or completes" Voltron and is de facto Phase III work. Compl. ¶ 125. The Government maintains the work is simply continued development and operationalizing, not additional services. Mot. at 7. In Contracting Officer Barbara Golf's Declaration, she states that the Government chose not to onboard Voltron and directed her team to "extend [the] existing software baseline to manage the [TacSRT] mission set." Tab 168 at Admin. R. ("AR") AR1909. Plaintiff alleges one of the decision-makers demonstrated a bias against awarding future work to Strategi. Compl. ¶¶ 50, 52, 140. Defendant does not address this allegation. Plaintiff further asserts the Air Force has assigned de facto Phase III work to substitute performers in Dragon Army through the vehicle of existing Task Orders. Compl. ¶¶ 73–74. Plaintiff maintains this action is akin to awarding a contract to a competing private company. Resp. at 15–20. Defendant denies this and describes Dragon Army

as a government organization that "employs multiple service support contractors to support its software development and maintenance missions" along with its government employees. Mot. at 5. Plaintiff claims the Government's denials serve to "evade procurement law by rebranding funded contract vehicles as 'internal resources.'" Resp. at 16.

Thus, numerous factual disputes persist. At this stage, Plaintiff need only prove its jurisdictional factual allegations by a preponderance of the evidence. *See Reynolds*, 846 F.2d at 748. "Showing something by a preponderance of the evidence simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before it may find in favor of the party who has the burden to persuade the Court of the fact's existence." *Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993) (citation modified).

Here, evidence demonstrates the following is more likely than not: the Government reviewed Strategi's Phase III proposals; the Agency declined to award Strategi a Phase III contract; the Government requested Strategi's codebase for the Voltron software; the Government continues development on a TacSRT software similar to Voltron; and private contractors have likely been assigned this work, at least to some extent. At this stage, Plaintiff's allegations amount to a reviewable procurement claim.

"'Procurement' includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 41 U.S.C. § 111. This Court follows the Federal Circuit's repeated broad interpretation of what constitutes a procurement. *Distributed Sols.*, 539 F.3d at 1346 ("A proposed procurement, like a procurement, begins with the process for determining a need for property or services."); *Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1381 (Fed. Cir. 2018) (finding bid protest jurisdiction extends only "to actions in which the government at least initiated a procurement, or initiated the process for determining a need for acquisition" (citation omitted)).

The Government identifies several cases finding internal agency decisions to use "in-house" resources should not be considered connected to "procurements," even under the Federal Circuit's broad scope of procurement jurisdiction. Mot. at 12–14; *see ASTi,*, 173 Fed. Cl. 587. *ASTi* focused on a dispute where the government originally awarded a contract to develop Digital Radio Management System training software to another contractor, and ASTi filed a protest. *ASTi*, 173 Fed. Cl. at 589–90. Subsequently, the Government remedied its action by cancelling the contract and developing the work internally. *Id.* at 590. ASTi argued the Court still had jurisdiction to review the Government's action. *Id.* However, the Court held there was not "a sufficiently concrete government procurement action that would make ASTi's bid protest ripe." *Id.*

Plaintiff persuasively distinguishes *ASTi* on multiple grounds. Resp. at 17. Strategi argues that *ASTi* assessed a government action to internally develop its own product that it had developed over twenty years ago, and there was "no reason to acquire anything new." *Id.* (citing *ASTi*, 173 Fed. Cl. at 590–92). Plaintiff also distinguishes *ASTi*, noting that here, the Agency

funded Strategi's Voltron product, the Agency declined Plaintiff's Phase III proposal, and the Agency duplicated Voltron's features to continue work with third-party contractors.  Resp. at 17.  Plaintiff characterizes this as "acquisition by another name."  *Id.*  Indeed, the Government's acknowledgement that Dragon Army "employs multiple service support contractors" in its software development projects supports Plaintiff's allegations, at least at this stage.  Mot. at 5.

In *ASTi*, the plaintiff's only evidence that a private contractor was engaged in follow-on work was that an outside contractor had posted a job opening for similar work.  173 Fed. Cl. at 590.  Here, Plaintiff identifies robust evidence that the Government is likely assigning private contractors the work in dispute.  Resp. at 16.  Barbara Golf's declaration states that she decided not to onboard Voltron and "extend[ed] existing software baseline to manage the [TacSRT] mission set," and assigned the further development to her team, Dragon Army.  Tab 168 at AR1909.  The Government's acknowledgement that Dragon Army includes "service support contractors" also bolsters the allegation that the Contracting Officer assigned Voltron-derived work to a private entity.  Mot. at 5.

Additionally, *ASTi* contemplates that even some government decisions to develop its own product can amount to a procurement:

> At some point, a government decision to develop a product can amount to having determined a need under *Distributed Solutions*, and then the government needs to look at possible outside suppliers.  10 U.S.C. § 3453.  But when the government is working on software that it developed long ago and has not issued any solicitations or requests for information . . . the alleged procurement is simply too speculative to fall within the court's jurisdiction.

173 Fed. Cl. at 593.

Here, the alleged acquisition is more defined: Plaintiff proffers that the Government declined a proposal for follow-on work in 2025 and simultaneously pursued similar work with private contractors.  Resp. at 9.

The Government also asks this Court to follow the holdings in *VFA v. United States*, 118 Fed. Cl. 735 (2014) and *International Genomics v. United States*, 104 Fed. Cl. 669 (2012).  Mot. at 14–16.  Both cases noted that in *Distributed Solutions*, the company protested a decision in connection with a formal Request for Information sent publicly.  *Int'l Genomics*, 104 Fed. Cl. at 676; *VFA*, 118 Fed. Cl. at 741.  The cases warned against opening a "Pandora's box" and expanding jurisdiction over informal government action.  *VFA*, 118 Fed. Cl. at 743.  Still, *Distributed Solutions* noted "the statute does not require an actual procurement.  The statute explicitly contemplates the ability to protest these kinds of pre-procurement decisions."  539 F.3d at 1346.

While Defendant is correct that the agency in *Distributed Solutions* sent formal Requests for Information to potential contractors, the holding does not suggest that such formal requests are required.  *Id.*  This was further clarified by the Federal Circuit in *Diaz*.  853 F.3d at 1358.  *Diaz* found bid protest subject-matter jurisdiction over a denial of an unsolicited proposal, and

the Court recognized informal emails and the contracting officer's review as responses to the "proposed procurement." *Diaz*, 853 F.3d at 1358.

In addition, Defendant argues bid protest jurisdiction can only be applied to actions contesting a "violation of a statute or regulation" related to a procurement. Mot. at 16–17 ("[C]autionary and informative regulations and directives provide only internal governmental direction. . . . [Such] provisions supply no remedy for private parties in a judicial forum.") (quoting *Am. Tel. & Tel. Co. v. United States*, 307 F.3d 1374, 1380 (Fed. Cir. 2002)). Defendant posits the SBIR Phase III preference statute is not a procurement regulation statute, but merely an informal directive applying to contract formation. *Id.* at 17. SBIR states "Federal agencies and Federal prime contractors shall . . . (B) issue, without further justification, Phase III awards relating to technology . . . to the SBIR and STTR award recipients that developed the technology." 15 U.S.C. § 638(r)(4).

In contrast, Plaintiff reads the SBIR Phase III preference statute as mandating procurement compliance and not akin to the "cautionary and informative" regulations *Am. Tel. & Tel. Co.* prohibits. Resp. at 15. Plaintiff's interpretation is consistent with Federal Circuit precedent. *Arlton*, 2026 WL 294827, at *4 (holding protests of SBIR Phase III contract awards belong in the Court of Federal Claims because of its "exclusive jurisdiction to review the full range of procurement protest cases" (quoting *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1243 (Fed. Cir. 2010)).

According to Defendant, "Strategi fails to identify a single procurement or proposed procurement that Strategi was eligible to receive." Mot. at 11. Defendant maintains that the development of Vigil does not amount to an acquisition of services and thus does not amount to a procurement. However, developing research or prototypes is considered a procurement. *Squire Solutions, Inc.*, 156 Fed. Cl. at 262–63 ("The fact that the Topic focuses on research and development does not preclude it from being a procurement.").

Ultimately, Plaintiff has met its burden to show its protest is in connection with a procurement by a preponderance of the evidence. While this is sufficient to defeat a motion to dismiss on subject-matter jurisdiction, Strategi's burden of proof to survive a motion for judgment on the administrative record will be much higher.

### 2.    Undisputed Jurisdictional Facts Involve Government Insourcing and Denials of Procurement Proposal Actions.

There is no dispute that Strategi presented an extensive SBIR Phase III project proposal to the Agency, and the Agency declined to adopt it. *See* Mot. at 6; Resp. at 8–9. Count II of the Complaint explicitly contests the decision to decline the proposal. Compl. ¶¶ 105–12. Review of agency procurement proposal denials falls within this Court's subject-matter jurisdiction. *Diaz*, 853 F.3d at 1357–58.

Furthermore, if the government's actions were considered only internal agency decisions to pursue work in-house, see Reply at 2–3, the Court still possesses subject-matter jurisdiction to review the action. "The Air Force's decision to in-source . . . involved a process for determining

a need for property or services and was made in connection with a procurement or proposed procurement." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 370 (2012) (citation modified); *see also Loomacres, Inc.*, 134 Fed. Cl. at 783 (denying a motion to dismiss a former contractor's bid protest against the government's decision to insource future work); *MORI Assocs., Inc.*, 102 Fed. Cl. at 524–25 (finding the government's cancellation of a solicitation alongside an alleged violation of a statute falls within bid protest jurisdiction). *Contra VFA*, 118 Fed. Cl. at 743 (granting motion to dismiss protest of informal decision by agency to develop software in-house); *ASTi*, 173 Fed. Cl. at 592–94 (finding the government's insourcing decision not sufficiently concrete to be considered a procurement).

**B.      The Task Order Bar Does Not Preclude Plaintiff's Lawsuit.**

The Government contends FASA Task Order Bar prevents Strategi from bringing a bid protest.  Mot. at 18–21; 41 U.S.C. § 4106(f).  The statute stipulates a "protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order." *Id.*  The Agency claims Plaintiff's repeated references to "actions taken pursuant to issued task orders" equate to a direct and casual connection to the issuance of their task orders, and accordingly, this protest is precluded by the Task Order Bar.  Reply at 8.

Plaintiff counters that the Task Order Bar does not prohibit the "protest[ ] of every agency action that tangentially involves a task order."  Resp. at 20–21.  "[A] challenge to the selection (or planned selection) of a particular (task order) contracting vehicle does not equate to the 'proposed issuance' of a task order." *Tolliver Group, Inc. v. United States*, 151 Fed. Cl. 70, 101 (2020).  FASA simply bars the challenge of agency decisions that are "'directly and causally connected' to the issuance of a task order." *Id*. at 103 (quoting *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014)).  This Court has previously held that the Task Order Bar did not prohibit claims against solicitations with peripheral references to task orders. *See Tolliver Group Inc.*, 151 Fed. Cl. at 93–106; *BayFirst Sols., LLC v. United States*, 104 Fed. Cl. 493, 507–08 (2012).  The Task Order Bar requires a comprehensive review into the "connectedness of each challenged procurement decision to the issuance or proposed issuance of a task order." *BayFirst Sols., LLC*, 104 Fed. Cl. at 503.

"Not every decision that precedes the selection of a task order vehicle is so bound up with the proposed issuance of a task order that a protest of the decision would be prohibited by FASA." *Mori Assocs., Inc. v. United States*, 113 Fed. Cl. 33, 38 (2013).  Furthermore, "[p]rocurement decisions that are made *after* task orders have been issued are similarly not affected by the FASA prohibition." *Id.* at 38.

Here, Strategi's protest is directed at the Agency's violation of the SBIR Statute's Procurement Preference, not the task orders themselves.  Resp. at 21.  Specifically, Strategi is challenging the Agency's decision to use other contract vehicles, such as task orders, instead of awarding it a Phase III.  Compl. ¶ 126; *contra DataMill, Inc. v. United States*, 91 Fed. Cl. 740, 756–57 (2010) (finding Task Order Bar applied to bid protest claim where the government pursued contested work through a new task order).  It alleges the Agency is

engaging in "improper de facto Phase III work" through the identified task orders. Resp. at 24 (citing Compl. ¶¶ 71–74).

The Government's reliance on *SRA Int'l* is misplaced because "every allegation in SRA's complaint [was] connected to issuance of the task order." Mot. at 19; *SRA Int'l, Inc.*, 766 F.3d at 1412–13. Here, Strategi's allegations are not all directly related to the task orders. Strategi's core allegation is the Agency violated the SBIR Statute's Procurement Preference by not awarding it a Phase III contract. Compl. ¶¶ 71–74. In support, Plaintiff identifies three task orders which it alleges were used as vehicles to circumvent awarding the contract to Strategi. *Id.* Thus, the task orders are ancillary to Strategi's protest, and the Task Order Bar does not preclude this Court's review of Strategi's protest.

In the alternative, FASA's increased-scope exception applies. FASA generally bars plaintiffs from bringing a lawsuit "in connection with the issuance or proposed issuance of a task or delivery order," but it contains an exception applicable in the instant case. 10 U.S.C. § 3406(f)(1). "A protest on the ground that [a task or delivery order] increases the scope, period, or maximum value of the contract under which the order is issued" can proceed under this Court's jurisdiction. *Id.* Strategi's allegations fall within this exception.

Strategi's "Complaint properly alleges that the Agency is engaging in 'improper de facto Phase III work' through the identified task orders." Resp. at 24 (citing Compl. ¶¶ 71–74). Strategi is not contesting the Agency's decision to procure software via a task order. Rather, Strategi contends private companies have been assigned de facto Phase III work through task orders, even though the work does not fall under the task orders. *Id.* at 16. "Accordingly, even if [Strategi's] protest is in connection with the issuance or proposed issuance of the [] task order, the court nevertheless possesses jurisdiction to entertain the protest" because Strategi alleges the disputed work exceeds the task order's scope. *Glob. Comput. Enters., Inc. v. United States*, 88 Fed. Cl. 350, 416, *modified on reconsideration*, 88 Fed. Cl. 466 (2009); *see also DynCorp Int'l LLC v. United States,* 152 Fed. Cl. 490, 502–03 (2021) ("[W]hen a task order [is] drastically increase[d in] scope . . . , the task order is essentially a new procurement which was never subjected to full and open competition….").

### C.    Plaintiff Sufficiently Claims Relief Redressable by the Court.

The Government further asserts Strategi's claims do not meet Article III's redressability requirements because the alleged injury is not redressable under this Court's bid protest jurisdiction. Mot. at 21–27. In Defendant's view, "this Court does not possess jurisdiction to declare that the Air Force should or should not buy certain products or enter into certain contracts." Mot. at 21. However, this argument mischaracterizes Plaintiff's suit, which requests a ruling that the Government's actions constitute an abuse of discretion and an injunction preventing the Agency from assigning disputed work to other contractors. Compl. at 41–42. Under 28 U.S.C. § 1491(b)(2), this Court can grant relief in bid protest actions through "any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." This broad language encompasses Plaintiff's requests for relief.

13

Defendant is correct that the "true nature" of the pleading is determinative as to redressability. Reply at 11 (citing *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006)). Here, Plaintiff does not seek monetary relief, only injunctive and declaratory relief. Compl. at 41–42. Whether Plaintiff can show its entitlement to such relief is yet to be determined. However, at this stage, the Court has jurisdiction over the relief Plaintiff requests.

Defendant also contends Plaintiff's claims would be more appropriately addressed under the Contract Disputes Act or this Court's copyright jurisdiction under 28 U.S.C. § 1498. Mot. at 22–27. Defendant cites *United States v. Bormes*, which holds "an additional remedy in the Court of Claims is foreclosed when it contradicts the limits of a precise remedial scheme." Mot. at 22; *United States v. Bormes*, 568 U.S. 6, 13 (2012). However, *Bormes* determined that the Court of Federal Claims could not review a claim for Tucker Act review when a more direct remedy was provided by the Fair Credit Reporting Act. 568 U.S. at 12–13. *Bormes* does not speak to cases in which claims are potentially redressable under multiple sections of the Tucker Act. *See id.* Here, Plaintiff has shown potential redressability under the Court's bid protest jurisdiction.

## IV.    Conclusion

This Court has jurisdiction over Plaintiff's claims under 28 U.S.C.§ 1491. Defendant's subject-matter jurisdiction objections fail because Plaintiff has shown its allegations relate to a procurement by a preponderance of the evidence. Plaintiff's claims are not connected to the issuance of a task order and are not precluded by the Task Order Bar. Defendants' objections to Plaintiff's standing under Article III also fail because Plaintiff requests relief explicitly contemplated by this Court's bid protest jurisdiction. Accordingly, Defendant's Motion to Dismiss is **DENIED**. ECF No. 29. However, Plaintiff's burden will be higher at later stages of this case, and Plaintiff's evidence in support of jurisdiction will be reevaluated according to the motion for judgment on the administrative record standard at the appropriate time.

The stay in the case is **LIFTED**. The Parties **MUST** file a Joint Status Report by July 15, 2026, with a proposed deadline for the Defendant's Response to Plaintiff's Motion to Supplement the AR and proposed deadlines for Cross-Motions for Judgment on the Administrative Record. The Joint Status Report should also include the Parties' positions on referral to Alternative Dispute Resolution.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge

14